# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| Headwater Research LLC, | Case No.  2:25-cv-00693 |
| *Plaintiff*, | |
| v. | **Complaint for Patent Infringement** |
| AT&T Services, Inc., AT&T Mobility, LLC and AT&T Enterprises LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Headwater Research LLC ("Headwater") files this complaint against Defendants AT&T Services, Inc., AT&T Mobility, LLC and AT&T Enterprises LLC (collectively, "Defendants" or "AT&T"), alleging infringement of U.S. Patent Nos. 8,355,337, 8,527,630, 8,583,781, 8,630,617, 8,788,661, and 8,924,549.

## BACKGROUND

1.     This complaint arises from Defendants' infringement of the following United States patents owned by Headwater, each of which relate to wireless communications technology: U.S. Patent Nos. ,355,337, ("'337 patent"), 8,527,630, ("'630 patent"), 8,583,781, ("'781 patent"), 8,630,617, ("'617 patent"), 8,788,661, ("'661 patent"), and 8,924,549 ("'549 patent") (collectively, "Asserted Patents").

2.     Dr. Gregory Raleigh—the primary inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and

military systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and a BS in Electrical Engineering from Cal Poly San Luis Obispo. He is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

3. Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless communications technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

4. In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

5. Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields

of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the capacity of wireless networks.

6.    Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

7.    After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks's chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

8.    Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), and 802.11ax (Wi-Fi 6).

9.    After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric

problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones. He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

10.     In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh and others on the Headwater team.

11.     Smartphones and other mobile devices have become ubiquitous and inseparable components of our daily lives, allowing us to make and receive phone calls, get notifications, download music, upload photos, stream entertainment, transact business, exchange ideas, and keep us connected to our family and friends whether they are down the hall or around the globe. Users can get email, install apps, and browse the internet from these tiny devices by making use of data connectivity services. These devices accomplish these amazing feats by exchanging staggering amounts of data over the internet using wireless and cellular networks, relying on ubiquitous data connectivity to keep users up-to-date and connected.

12.     Since 2011, mobile device data demand has exploded—increasing by almost 400%—with each user consuming approximately 11.5 gigabytes of data per month. In the aggregate, this equates to approximately 90 exabytes of data consumption per month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3. For context: a single exabyte of data is equivalent to one billion gigabytes of data. Said another way, if one

gigabyte is the size of the Earth, then an exabyte is the size of the sun. *See, e.g.*, https://www.backblaze.com/blog/what-is-an-exabyte/.

13.     And mobile device data demand shows no sign of slowing down. Between now and 2027, mobile data demand is projected to increase more than three-fold, from 90 exabytes per month to a staggering 282 exabytes per month, with each user consuming an average of 41 gigabytes of data each and every month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-calculator?up=2&bp=1&v=0&c=2; https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3.





14. Also in 2008, Dr. Raleigh founded ItsOn Inc., which licensed Headwater's intellectual property and implemented Headwater's technology into software and services that expanded cellular service plan offerings and improved device and data management capabilities. The tools and technologies delivered by ItsOn allowed carriers to implement Headwater's technologies in end-user devices—such as mobile phones and tablets—opening up new business models while also providing greater flexibility to carriers and device manufacturers and allowing them to reduce costs while simultaneously improving their devices and services.

## <u>NOTICE OF THE ASSERTED PATENTS</u>

15. The patented technologies which are the subject of this lawsuit are well known to Defendants.

16. On or about January 20, 2009, ItsOn entered into a non-disclosure agreement ("NDA") with AT&T.

6

17.     On or about January 20, 2009, Greg Raleigh—ItsOn's Chief Executive Officer—met with AT&T personnel.

18.     During that meeting, Dr. Raleigh and AT&T personnel discussed how ItsOn's proprietary intellectual property—including Headwater's proprietary intellectual property licensed to ItsOn—could benefit AT&T and its customers.

19.     Over the next several months, Dr. Raleigh had calls and meetings with many other AT&T executives regarding implementing ItsOn's features and functionalities into AT&T's service offerings, as well as the pending/issued patents covering the technology.

20.     The ItsOn solution was an end to end solution with a lot of valuable capabilities that can benefit service providers, such as AT&T.

21.     In July 2009, ItsOn divulged detailed presentations under NDA discussing ItsOn's software and Headwater's technological solutions, and how those technologies could solve AT&T's data demand problems and network-related problems while simultaneously opening up new revenue channels for AT&T. These discussions included comprehensive feature roadmaps, prototype timelines, and financial projections discussing how ItsOn's software and Headwater's unique portfolio of intellectual property would benefit AT&T and its customers.

22.     On or around July 7, 2009, AT&T requested, and ItsOn provided information regarding issued or pending patents held by ItsOn. ItsOn communicated to AT&T that the technologies provided by the ItsOn solution were the subject of more than twenty-one patents which included over 1,000 claims that were pending and would issue to Headwater and would be licensed to ItsOn.

23.     The functionality and solutions presented to AT&T led the parties to consider consummating an exclusive deal between ItsOn and AT&T, under which ItsOn would scale and

implement its technological solutions to assist AT&T with data demand and increase AT&T's revenue streams.

24.    Instead of working with ItsOn to implement the technological solutions to benefit AT&T and its customers, AT&T chose not to follow through on the exclusive arrangement with ItsOn.

25.    Headwater's and ItsOn's technological solutions would have benefitted AT&T and its customers by reducing data usage and network congestion, improving security, extending battery life on individual devices, and providing additional revenue channels for AT&T.

26.    In June 2011, ItsOn received an anonymous package, containing a copy of a May 3, 2010, AT&T Presentation ("2010 AT&T Presentation").

27.    ItsOn learned from the 2010 AT&T Presentation that AT&T personnel proposed developing a new software agent based on the information AT&T learned from ItsOn. Indeed, the 2010 AT&T Presentation specifically identified this new, internal AT&T software agent as a replacement for the solutions offered to AT&T and disclosed by ItsOn under NDA.

28.    Despite AT&T's stated plans to replace ItsOn solution with its own—as revealed through the 2010 AT&T Presentation—ItsOn remained open to working with AT&T to reduce cost, improve network issues, and increase revenue streams. In August 2011, Greg Raleigh and ItsOn met with AT&T personnel to again discuss how ItsOn's solutions could benefit AT&T and its customers, and increase revenues for AT&T.

29.    Ultimately, AT&T did not enter into a contract with ItsOn.

30.    Over the next several years, AT&T sold devices and provided services which included features and functionalities that were the subject of the AT&T and ItsOn relationship, with technology AT&T learned from ItsOn, and which infringe Headwater's Asserted Patents.

## PLAINTIFF HEADWATER AND THE PATENTS-IN-SUIT

31.    Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

32.    Headwater is the owner of U.S. Patent No. 8,355,337, titled "Network based service profile management with user preference, adaptive policy, network neutrality, and user privacy," which issued January 15, 2013. A copy of the '337 patent is attached to this complaint as Exhibit 1.

33.    Headwater is the owner of U.S. Patent No. 8,527,630, titled "Adaptive ambient services," which issued September 3, 2013. A copy of the '630 patent is attached to this complaint as Exhibit 2.

34.    Headwater is the owner of U.S. Patent No. 8,583,781, titled "Simplified service network architecture," which issued November 12, 2013. A copy of the '781 patent is attached to this complaint as Exhibit 3.

35.    Headwater is the owner of U.S. Patent No. 8,630,617, titled "Device group partitions and settlement platform," which issued January 14, 2014. A copy of the '617 patent is attached to this complaint as Exhibit 4.

36.    Headwater is the owner of U.S. Patent No. 8,788,661, titled "Device assisted CDR creation, aggregation, mediation and billing," which issued July 22, 2014. A copy of the '661 patent is attached to this complaint as Exhibit 5.

37.    Headwater is the owner of U.S. Patent No. 8,924,549, titled "Network based ambient services," which issued December 30, 2014. A copy of the '549 patent is attached to this complaint as Exhibit 6.

## DEFENDANTS AND THE ACCUSED INSTRUMENTALITIES

38.    On information and belief, Defendant AT&T Services, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 208 South Akard Street, Dallas, Texas 75202.

39.    On information and belief, Defendant AT&T Mobility, LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

40.    On information and belief, Defendant AT&T Enterprises LLC is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 208 South Akard Street, Dallas, Texas 75202.

41.    The Accused Instrumentalities are AT&T's cellular networks, servers, and services made, used, offered for sale, sold, and/or imported by Defendants in the United States (including eSIM provisioning and management systems/components such as SM-DP+, SM-DP, RSP, SM-SR, SM-DS, AAA/UDM/AUSF, HLR/HSS, and PCRF/PCF entities) as well as eSIM-enabled devices (including mobile phones, tablets, wearables, laptops, IoT devices, M2M devices, and vehicle infotainment systems) that operate on AT&T's cellular network, including devices used, offered for sale, sold, and/or imported by Defendants in the United States.

## JURISDICTION AND VENUE

42.    This action arises under the patent laws of the United States, Title 35 of the United States Code.

43.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

44.    This Court has personal jurisdiction over AT&T in this action because AT&T has

committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over AT&T would not offend traditional notions of fair play and substantial justice. AT&T, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Eastern District of Texas, regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in Texas, and commit acts of infringement of Headwater's patents in this District by, among other things, making, using, importing, offering to sell, and selling products and services that infringe the asserted patents, including without limitation the mobile electronic devices, including mobile phones and tablets, and the cellular networks, servers, and services accused of infringement in this complaint.

45.    AT&T, directly and/or through subsidiaries or intermediaries, have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

46.    Venue as to AT&T is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, AT&T resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District.

47.    For example, AT&T advertises its wireless networks are available in Texas, including within the Eastern District of Texas. *See e.g.*, https://www.att.com/maps/wireless-coverage.html:



48.     AT&T had more than 196 million subscribers as of March 31, 2022. *See* https://investors.att.com/~/media/Files/A/ATT-IR-V2/financial-reports/quarterly-earnings/2022/1Q22/ATT_1Q22_8K.pdf.

49.     AT&T owns, leases, maintains and/or operates cellular base stations throughout this District to sell and provide 5G data services to customers, in infringement of the Asserted Patents in this District.

50.     AT&T also sells mobile devices that operate on its wireless networks in Texas, including within the Eastern District of Texas. *See, e.g.*, https://www.att.com/maps/wireless-coverage.html:



51.     On information and belief, AT&T owns and operates a foundry at 2900 West Plano Parkway, Plano, Texas 75075. *See, e.g.*, https://about.att.com/story/2018/plano_foundry.html.

## COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '337 PATENT

52.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

53.     On January 15, 2013, the United States Patent and Trademark Office issued U.S. Patent No. 8,355,337, titled "Network based service profile management with user preference, adaptive policy, network neutrality, and user privacy."  Ex. 1.

54.     Headwater is the owner of the '337 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

55.    The written description of the '337 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

56.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '337 patent, and Headwater is entitled to damages for Defendants' past infringement.

57.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '337 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '337 patent and by inducing others to infringe the claims of the '337 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '337 patent.

58.    On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 7 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '337 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

59.    Defendants also knowingly and intentionally induce and contribute to infringement of the '337 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '337 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed the ' patent. Similarly, Defendants have had knowledge or were willfully blind of the '337 patent

and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and AT&T discussing ItsOn's and Headwater's intellectual property, including pending patent applications and issued patents, during the product development, technological, and marketing team meetings in 2009-2010.

60.     Despite this knowledge of the '337 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '337 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '337 patent, thereby specifically intending for and inducing their customers to infringe the '337 patent through the customers' normal and customary use of the Accused Instrumentalities.

61.     Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '337 patent.

62.     Defendants have induced, and continue to induce, infringement of the '337 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

63.     Headwater has been damaged by Defendants' infringement of the '337 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '630 PATENT

64.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

65.     On September 3, 2013, the United States Patent and Trademark Office issued U.S. Patent No. 8,527,630, titled "Adaptive ambient services."  Ex. 2.

66.     Headwater is the owner of the '630 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

67.     The written description of the '630 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.     Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '630 patent, and Headwater is entitled to damages for Defendants' past infringement.

69.     Defendants have directly infringed (literally and equivalently) and induced others to infringe the '630 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '630 patent and by inducing others to infringe the claims of the '630 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '630 patent.

70.     On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 8 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '630 patent, which

Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

71.     Defendants also knowingly and intentionally induce and contribute to infringement of the '630 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '630 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed the '630 patent. Similarly, Defendants have had knowledge or were willfully blind of the '630 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and AT&T discussing ItsOn's and Headwater's intellectual property, including pending patent applications and issued patents, during the product development, technological, and marketing team meetings in 2009-2010.

72.     Despite this knowledge of the '630 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '630 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '630 patent, thereby specifically intending for and inducing their customers to infringe the '630 patent through the customers' normal and customary use of the Accused Instrumentalities.

73.     Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '630 patent.

74.     Defendants have induced, and continue to induce, infringement of the '630 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the

Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

75.    Headwater has been damaged by Defendants' infringement of the '630 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 3 – CLAIM FOR INFRINGEMENT OF THE '781 PATENT

76.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

77.    On November 12, 2013, the United States Patent and Trademark Office issued U.S. Patent No. 8,583,781, titled "Simplified service network architecture."  Ex. 3.

78.    Headwater is the owner of the '781 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

79.    The written description of the '781 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '781 patent, and Headwater is entitled to damages for Defendants' past infringement.

81.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '781 patent by making, using, selling, offering for sale, or importing products that

infringe the claims of the '781 patent and by inducing others to infringe the claims of the '781 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '781 patent.

82.    On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 9 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '781 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

83.    Defendants also knowingly and intentionally induce and contribute to infringement of the '781 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '781 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed the '781 patent. Similarly, Defendants have had knowledge or were willfully blind of the '781 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and AT&T discussing ItsOn's and Headwater's intellectual property, including pending patent applications and issued patents, during the product development, technological, and marketing team meetings in 2009-2010.

84.    Despite this knowledge of the '781 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '781 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '781 patent, thereby specifically intending for and inducing their customers to infringe the '781 patent through the

customers' normal and customary use of the Accused Instrumentalities.

85.    Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '781 patent.

86.    Defendants have induced, and continue to induce, infringement of the '781 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

87.    Headwater has been damaged by Defendants' infringement of the '781 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 4 – CLAIM FOR INFRINGEMENT OF THE '617 PATENT

88.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

89.    On January 14, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,630,617, titled "Device group partitions and settlement platform." Ex. 4.

90.    Headwater is the owner of the '617 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

91.    The written description of the '617 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time

of the invention.

92.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '617 patent, and Headwater is entitled to damages for Defendants' past infringement.

93.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '617 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '617 patent and by inducing others to infringe the claims of the '617 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '617 patent.

94.    On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 10 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '617 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

95.    Defendants also knowingly and intentionally induce and contribute to infringement of the '617 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '617 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and AT&T discussing ItsOn's and Headwater's intellectual property, including pending patent applications and issued patents, during the product development, technological, and marketing team meetings in 2009-2010.

96.    Despite this knowledge of the '617 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways

that directly infringe the '617 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '617 patent, thereby specifically intending for and inducing their customers to infringe the '617 patent through the customers' normal and customary use of the Accused Instrumentalities.

97.    Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '617 patent.

98.    Defendants have induced, and continue to induce, infringement of the '617 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

99.    Headwater has been damaged by Defendants' infringement of the '617 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 5 – CLAIM FOR INFRINGEMENT OF THE '661 PATENT

100.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

101.    On July 22, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,788,661, titled "Device assisted CDR creation, aggregation, mediation and billing."  Ex. 5.

102.    Headwater is the owner of the '661 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

103.    The written description of the '661 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

104.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '661 patent, and Headwater is entitled to damages for Defendants' past infringement.

105.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '661 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '661 patent and by inducing others to infringe the claims of the '661 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '661 patent.

106.    On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 11 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '661 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

107.    Defendants also knowingly and intentionally induce and contribute to infringement of the '661 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '661 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and AT&T discussing ItsOn's and Headwater's intellectual property, including pending patent applications

and issued patents, during the product development, technological, and marketing team meetings in 2009-2010.

108.    Despite this knowledge of the '661 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '661 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '661 patent, thereby specifically intending for and inducing their customers to infringe the '661 patent through the customers' normal and customary use of the Accused Instrumentalities.

109.    Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '661 patent.

110.    Defendants have induced, and continue to induce, infringement of the '661 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

111.    Headwater has been damaged by Defendants' infringement of the '661 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 6 – CLAIM FOR INFRINGEMENT OF THE '549 PATENT

112.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

24

113.    On December 30, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,924,549, titled "Network based ambient services."  Ex. 6.

114.    Headwater is the owner of the '549 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

115.    The written description of the '549 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

116.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '549 patent, and Headwater is entitled to damages for Defendants' past infringement.

117.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '549 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '549 patent and by inducing others to infringe the claims of the '549 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '549 patent.

118.    On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 12 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '549 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

119.    Defendants also knowingly and intentionally induce and contribute to infringement

of the '549 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '549 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and AT&T discussing ItsOn's and Headwater's intellectual property, including pending patent applications and issued patents, during the product development, technological, and marketing team meetings in 2009-2010.

120.    Despite this knowledge of the '549 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '549 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '549 patent, thereby specifically intending for and inducing their customers to infringe the '549 patent through the customers' normal and customary use of the Accused Instrumentalities.

121.    Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '549 patent.

122.    Defendants have induced, and continue to induce, infringement of the '549 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

123.    Headwater has been damaged by Defendants' infringement of the '549 patent and

is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## JURY DEMAND

124.    Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Headwater prays for the following relief:

A.    A judgment in favor of Headwater that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.    A judgment and order requiring Defendants to pay Headwater past and future damages arising out of Defendants' infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

C.    A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

D.    A judgement that Defendants' infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E.    A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater's reasonable attorney's fees and costs; and

F.    Any and all other relief to which Headwater may be entitled.


Dated:   July 7, 2025                             Respectfully submitted,

                                                 */s/ Marc Fenster*
                                                 Marc Fenster
                                                 CA State Bar No. 181067

Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329617
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Ryan K. Lundquist
CO State Bar No. 56449
Email: rlundquist@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**